**United States District Court**
For the Northern District of California

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                          NORTHERN DISTRICT OF CALIFORNIA

7

8   EDWARD CHARLES JENKINS,                    No. C-12-3054 EMC (pr)

9              Petitioner,

10       v.                                    **ORDER DENYING PETITION FOR**
                                               **WRIT OF HABEAS CORPUS**
11  P. L. VASQUEZ (Warden),

12             Respondent.
    _____/
13

14

15                      **I.    INTRODUCTION**

16        Edward Charles Jenkins, a state prisoner at High Desert State Prison, has filed a *pro se*

17  petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 2011 conviction on

18  two counts of failing to register as a sex offender within five days of moving and one count of failing

19  to notify law enforcement of a change of address and the resulting sentence.  The petition is now

20  ready for a decision on the merits.  For the reasons discussed below, the petition is **DENIED**.

21                      **II.    BACKGROUND**

22  A.    The Crimes

23        The California Court of Appeal summarized the evidence of the crimes presented at trial:

24              Jenkins was at a homeless shelter when he met his girlfriend, Jennifer
                Garcia.  After Garcia obtained a Section 8 housing voucher, Jenkins
25              helped her move in to an apartment located at 460 South Fourth Street
                in San Jose.  Garcia said Jenkins was merely a frequent visitor at her
26              apartment, coming over at 3:00 or 4:00 a.m. and leaving around 7:00
                or 8:00 a.m. to go to the Salvation Army or look for work.  He would
27              only sleep for two or three hours because "he knew he didn't live
                there."  Jenkins did not have keys to the apartment, he did not pay
28              utilities and he was not listed on the rental contracts.  Garcia admitted

**United States District Court**
For the Northern District of California

that she was not permitted to live with a registered sex offender as a Section 8 voucher recipient. She allowed Jenkins to use her apartment as a storage unit and to receive his mail. He also sometimes cooked for her and shopped for groceries. Though she denied that he lived with her, Garcia said other people believed he did because of the many police calls to the premises.

A neighbor, Mary Williams, said she believed that Jenkins had moved in with Garcia because she had seen him move his belongings into the apartment and she saw him at the apartment complex both day and night. Williams often heard Jenkins arguing loudly with Garcia and heard him refer to Garcia's apartment as his residence. She also saw him drinking 40–ounce beers at the apartment daily and he often appeared to be under the influence of alcohol.

San Jose Police Officer Lee Lawrence responded to a late-night call at 460 South Fourth Street and contacted Jenkins, who appeared intoxicated, and was standing in front of the building. Jenkins admitted he had been drinking and was drunk, so Lawrence took him into custody for public intoxication.

On May 24, 2010, Jenkins helped Garcia move to a new apartment located at 520 South Willard Street in San Jose. Jenkins did not have keys to this apartment, was not listed on the rental contracts and did not pay utilities. However, photographs of the apartment's interior showed Jenkins' clothing, shoes, toiletries and business records.

San Jose Police Officer Keith Aldinger responded to a call at 520 South Willard Street on May 29, 2010, at about 10:00 p.m. and found Jenkins and Garcia arguing. Jenkins appeared to be "extremely intoxicated" and was yelling that "[s]ome fucking ... white bitch knocked on my door and asked for cigarettes." On May 31, 2010, Aldinger responded to another call to 520 South Willard Street, and again found Jenkins to be loud, agitated and extremely intoxicated. Aldinger arrested Jenkins for disturbing the peace and public intoxication.

Jenkins advised Aldinger he was a sex offender registered as a transient. Based on the multiple calls, Aldinger suspected Jenkins was residing with Garcia and spoke to the neighbors, who said they believed Jenkins was living at the apartment.

Diana Ortega, who also lived at the apartments at 520 South Willard Street, said Jenkins drank and was disrespectful toward the other tenants at the complex. He only left the premises to "go get the alcohol." Another neighbor, Andrew Hunt, said he saw Jenkins at the premises "[p]retty much every day ... day and night." Hunt only heard Jenkins describe the apartment as "his lady's apartment," though Hunt believed Jenkins was sleeping there since his personal belongings were in the apartment.

A neighbor at 518 South Willard Street, Jolene Rieken, said Jenkins was at the complex daily and cooked a meal for her and her children at Garcia's apartment on one occasion. Jenkins and Garcia would frequently have loud arguments, even in the middle of the night, and

2

1   she saw him every morning at the apartment.  Jenkins said that the
    apartment was his, as was everything inside it, and that Garcia would
2   have "nothing without him."

3   Francis Gallegos, an analyst from the San Jose Police Department's
    sex offender registration unit, confirmed that the registration form
4   requires those claiming a residential address to provide proof of
    residence, whereas transients are to state the areas they frequent.
5   Proof of residence could include mail from the county, state or federal
    government to a particular address, or a California driver's license,
6   California state identification, recent utility bills, etc.  Gallegos
    confirmed that Jenkins registered at residential addresses as required
7   until April 3, 2009, and from that date on he registered as a transient.
    Jenkins never registered as a resident at either 460 South Fourth Street
8   or 520 South Willard Street.

9   *People v. Jenkins*, 2012 WL 210371 *1-2 (Cal. App. 6 Dist. 2012) (footnote omitted).

10  B.    Procedural History

11         At a jury trial in Santa Clara County Superior Court, Jenkins was found guilty of two counts

12  of failing to register as a sex offender within five days of moving to a new address (Pen. Code, §

13  290.011(b)) and one count of failing to notify law enforcement of a change of address (§ 290(b)).

14  Reporter's Transcript ("RT") at 507-08.  At a bifurcated bench trial, the trial court found Jenkins had

15  six prior strike convictions.  Clerk's Transcript ("CT") at 237-40, 333-34.  On June 17, 2011, the

16  trial court sentenced him to seven years and four months in prison, after striking five of petitioner's

17  six strike findings.  RT at 530-32; CT at 431.

18         Jenkins timely appealed.  The California Court of Appeal affirmed Jenkins' judgment and

19  denied his habeas petition.  Jenkins did not file a petition for review with the California Supreme

20  Court.  However, he later file a habeas petition with the California Supreme Court that was denied.

21  Jenkins then filed his federal petition for writ of habeas corpus.  The Court issued an order to show

22  cause why the petition should not be granted.  Respondent has filed an answer and Jenkins filed a

23  traverse.  The matter is ready for a decision on the merits.

24              **III.    STANDARD OF REVIEW**

25         This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

26  custody pursuant to the judgment of a State court only on the ground that he is in custody in

27  violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The

28  Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new

United States District Court
For the Northern District of California

3

1    restrictions on federal habeas review.  A petition may not be granted with respect to any claim that
2    was adjudicated on the merits in state court unless the state court's adjudication of the claim:
3    "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly
4    established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in
5    a decision that was based on an unreasonable determination of the facts in light of the evidence
6    presented in the State court proceeding."  28 U.S.C. § 2254(d).

7          "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court
8    arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the
9    state court decides a case differently than [the] Court has on a set of materially indistinguishable
10   facts."  *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

11         "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the
12   state court identifies the correct governing legal principle from [the] Court's decision but
13   unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "[A] federal
14   habeas court may not issue the writ simply because that court concludes in its independent judgment
15   that the relevant state-court decision applied clearly established federal law erroneously or
16   incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.  A federal habeas court
17   making the "unreasonable application" inquiry should ask whether the state court's application of
18   clearly established federal law was "objectively unreasonable."  *Id.* at 409.

19         The standard of review under AEDPA is somewhat different where the state court gives no
20   reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower
21   court decision on the claim.  In such a case, which applies to all the claims Petitioner raises here, a
22   review of the record is the only means of deciding whether the state court's decision was objectively
23   reasonable.  *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir.  2003); *Delgado v. Lewis*, 223 F.3d
24   976, 981-82 (9th Cir. 2000). When confronted with such a decision, a federal court should conduct
25   an independent review of the record to determine whether the state court's decision was an
26   objectively unreasonable application of clearly established federal law.  *Himes*, 336 F.3d at 853;
27   *Delgado*, 223 F.3d at 982.

28

# IV.   DISCUSSION

Jenkins argues that: (1) his federal due process rights were violated by improper jury instructions; (2) he was incorrectly charged; (3) his trial counsel was ineffective; and (4) he was sentenced to an unlawful and unauthorized prison term.  The Court will address each claim in turn.

A.     Jury Instructions

Jenkins argues that his federal due process rights were violated by the improper jury instructions regarding certain counts, the definition of 'willful' and with respect to the duty to register as a sex offender.

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings.  *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  *See, e.g., Stanton v. Benzler*, 146 F.3d 726, 728 (9th Cir. 1998) (state law determination that arsenic trioxide is a poison as a matter of law, not element of crime for jury determination, not open to challenge on federal habeas review).  Nor does the fact that a jury instruction was inadequate by Ninth Circuit direct appeal standards mean that a petitioner who relies on such an inadequacy will be entitled to habeas corpus relief from a state court conviction.  *See Duckett v. Godinez*, 67 F.3d 734, 744 (9th Cir. 1995) (citing *Estelle*, 502 U.S. at 71-72).

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.  *See Estelle v. McGuire*, 502 U.S. at 72; *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'").  The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  *See Estelle*, 502 U.S. at 72.  In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process.  *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

Jenkins' specific argument is difficult to discern.  He states there were improper jury instructions regarding the Penal Code § 290.011(b) offenses, the duty to register and the definition

**United States District Court**
For the Northern District of California

of 'willful'.  Petition at 5.  He offers very little in support of this claim and to the extent there was

any error in state law, he is not entitled to relief.  *See Estelle,* 502 at 71-72.  A review of the jury

instructions cited by Jenkins does not reveal any error, let alone an error that infected the entire trial

and violated due process.  With respect to the § 290.011(b) offenses, the jury was instructed with

CALCRIM No. 1170 that stated:

> The defendant is charged in count one with failing to register as a sex
> offender. To prove that the defendant is guilty of this crime the
> defendant [sic] must prove that, one, the defendant committed oral
> copulation by force.
>
> Two, the defendant resided in San Jose, California,
>
> Three, the defendant was registered as a transient.
>
> Four, the defendant actually knew he had a duty under Penal Code
> section 290 to register as sex offender within five working days, every
> residence at which he regularly . . . resided regardless of the number of
> days or nights spent there.
>
> And, five, the defendant willfully failed to register as a sex offender
> with the chief of police of the City of San Jose within five working
> days of changing his residence.

RT at 456-57; CT at 301-02.

The court then instructed on the definition of willfully, transient and residence.  RT at 457.

Jenkins does not specifically describe what is erroneous about this jury instruction and it correctly

reflects the elements of § 290.011(b)[1].  To the extent that Jenkins argues he did not have a duty to

register, that argument is contradicted by a plain reading of § 290.011(b).  Nor is there any error for

the failure to instruct on other subdivisions of § 290.011 that were not applicable in this case.  Even

if the trial court should have instructed on non-applicable aspects of the statute any error was

harmless.

With respect to the definition of 'willful' the jury was instructed that, "someone commits an

act willfully when he does it willingly or on purpose and with knowledge of the duty to register

---

[1] Section 290.011(b) states: A transient who moves to a residence shall have five working
days within which to register at that address, in accordance with subdivision (b) of Section 290.  A
person registered at a residence address in accordance with that provision who becomes transient
shall have five working days within which to reregister as a transient in accordance with subdivision
(a).

United States District Court

For the Northern District of California

1  pursuant to penal code section 290."  RT at 457-58.  Jenkins provides no explanation how this

2  instruction was an error and it appears adequate.  Nor is it clear how it could have violated due

3  process.  Unsupported and "[c]onclusory allegations which are not supported by a statement of

4  specific facts do not warrant habeas relief."  *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).   This

5  claim will be denied as there was no violation of due process with respect to these jury instructions.[2]

6  B.   Charges

7        Jenkins argues that the prosecution used the wrong section of the penal code to charge him

8  regarding a count in this case.

9        The decision whether to prosecute as well as the determination of the charge to be filed, rests

10  solely in the discretion of the prosecutor.  *See United States v. LaBonte*, 520 U.S. 751, 762 (1997)

11  ("[T]he discretion a prosecutor exercises when he decides what, if any, charges to bring against a

12  criminal suspect ... is an integral feature of the criminal justice system, and is appropriate, so long as

13  it is not based upon improper factors.");  *United States v. Batchelder*, 442 U.S. 114, 124 (1979)

14  (holding that the prosecutor has discretion to choose the statute under which the defendant is

15  charged).  "Courts generally have no place interfering with a prosecutor's discretion regarding

16  whom to prosecute, what charges to file, and whether to engage in plea negotiations."  *United States*

17  *v. Banuelos–Rodriguez*, 215 F.3d 969, 976 (9th Cir. 2000) (en banc).

18        Jenkins argues that he was unlawfully charged in count three with Penal Code § 290(b), but

19  should have been charged with Penal Code § 290.013.  Count three stated:

20        On or about June 6, 2010, in the County of Santa Clara, State of
        California the crime of FAILURE TO INFORM LAW
21        ENFORCEMENT AGENCY OF NEW ADDRESS  - BASED ON A
        FELONY CONVICTION AND A JUVENILE ADJUDICATION, in
22        violation of PENAL CODE SECTION 290(b), a Felony, was
        committed by EDWARD CHARLES JENKINS, who did, while
23        required to register under Penal Code section 290 based on a felony
        conviction ~~and a juvenile adjudication~~, a violation of section 286(c) of
24        the Penal Code, in the Superior Court, Santa Clara County (78503),
        California, change his ~~or her~~ residence address(es), and willfully failed
25        to register within 5 working days, the San Jose Police Department, the

26

27  _____
        [2] To the extent Jenkins argues there was not sufficient evidence of certain elements of these
28  offenses, that is a separate claim that he has not been brought in state or federal court and is not
     connected to the adequacy of the jury instructions in this case.

7

law enforcement agency with which he ~~or she~~ last registered of his ~~or her~~ new address(es) and location(s).

CT at 238 (capitals and strikeouts in original).

Jenkins argues that he should have been charged with Penal Code § 290.013 which provides:

> (a) Any person who was last registered at a residence address pursuant to the Act who changes his or her residence address, whether within the jurisdiction in which he or she is currently registered or to a new jurisdiction inside or outside the state, shall, in person, within five working days of the move, inform the law enforcement agency or agencies with which he or she last registered of the move, the new address or transient location, if known, and any plans he or she has to return to California.

Cal. Penal Code § 290.013.

While Penal Code § 290.013 could apply to Jenkins, it is well within the discretion of the prosecution on how to charge a defendant.  Jenkins has made no allegations that the prosecution's decision to charge him was due to any inappropriate reason that could rise to a constitutional violation.[3]  Based on Jenkins state habeas petition, it appears he is arguing that because he was already residing in Santa Clara County and did not move into the county then § 290.013 should apply instead of § 290(b).  Yet, § 290(b) states that a person must register when, "changing his or her residence within, any city, county, or city and county, or campus in which he or she temporarily resides, and shall be required to register thereafter in accordance with the Act."  Thus, Jenkins was appropriately charged by this section and Jenkins' contentions fail to raise a federal claim.  This claim is denied.

C.      Ineffective Assistance of Counsel

Jenkins argues that trial counsel was ineffective for failing to investigate that Jenkins was never arrested for the felony charged in this case and for failing to file a motion pursuant to *Pitchess v. Superior Court*, 11 Cal. 3d 531 (Cal. 1974), to review the personnel files of the arresting officer.

---

[3] The government may not make decisions to prosecute based on "an unjustifiable standard such as race, religion, or other arbitrary classification," though there is a presumption that the prosecution did not rely on such factors.  *United States v. Armstrong*, 517 U.S. 456, 465 (1996).

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687–88. Second, he must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011). A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *See id.* at 1410–11. The general rule of *Strickland*, *i.e.*, to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland' s deferential standard." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

To demonstrate deficient performance, a petitioner is required to show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687.

United States District Court

For the Northern District of California

1    The first part of Jenkins' claim appears to be that while he was arrested for disturbing the

2    peace and public intoxication, he was later charged, tried and convicted for failing to register as a

3    sex offender.  Petitioner argues that trial counsel should have investigated and challenged this

4    situation.  Jenkins does not explain nor is the Court aware how failure of counsel to address this

5    issue could constitute ineffective assistance of counsel.  Jenkins has cited no law, state or federal,

6    that a defendant must be arrested for the specific offense that is later charged.  Nor is the Court

7    aware of any violation of federal law that could support this claim.  Counsel was not ineffective for

8    failing to address this issue.  *See Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012) ("It should be

9    obvious that the failure of an attorney to raise a meritless claim is not prejudicial, ....").

10    Jenkins next contends that trial counsel should have filed a *Pitchess* motion to review the

11    personnel files of the arresting police officer.  In *Pitchess*, 11 Cal. 3d at 537–38, the California

12    Supreme Court held that, under certain circumstances, criminal defendants are entitled to discovery

13    of information in a law enforcement officer's personnel file that can assist their defense.  Jenkins

14    argues that the arresting officer improperly amended the arrest report.  While Jenkins was arrested

15    for disturbing the peace and public intoxication, it appears the arresting officer discovered that

16    Jenkins was a sex offender who had not updated his registration and amended the arrest report to

17    include this information and additional charges.  Jenkins feels this was improper and trial counsel

18    should have filed a *Pitchess* motion to discover if the arresting officer had other instances of similar

19    behavior.

20    While Jenkins believes that police officers may not add charges or amend police reports, he

21    provides no explanation as to how this action was a violation of state or federal law.  Thus, he has

22    not demonstrated how trial counsel was ineffective for failing to pursue this matter.  Such discovery

23    would not have helped his defense.  Trial counsel cannot be faulted for failing to file a *Pitchess*

24    motion as such a motion would not have succeeded.  *See Jones v. Ryan*, 691 F.3d at 1101; *see also*

25    *Reyes v. Yates*, 2010 WL 2598280, at *16 (C.D. Cal., May 3, 2010) (unpublished decision finding no

26    deficient performance for counsel's failure to file a *Pitchess* motion where habeas petitioner made

27    no specific misconduct allegations as would have been necessary to support a *Pitchess* motion).

28    This claim lacks merit and is denied.

United States District Court

For the Northern District of California

D.      Sentencing

Jenkins argues that he was sentenced to an unlawful term.

State sentencing courts must be accorded wide latitude in their decisions as to punishment. *See Walker v. Endell*, 850 F.2d 470, 476 (9th Cir. 1987).  Generally, therefore, a federal court may not review a state sentence that, like Petitioner's sentence here, falls within statutory limits.  *Id*.  A federal court may vacate a state sentence imposed in violation of due process if a state trial judge imposed a sentence in excess of state law, *Walker*, 850 F.2d at 476, or enhanced a sentence based on materially false or unreliable information or a conviction infected by constitutional error, *see United States v. Hanna*, 49 F.3d 572, 577 (9th Cir. 1995).

Jenkins was sentenced to seven years and four months in prison.  RT at 531-32.  The trial court used count three (Penal Code § 290(b)) as the 'base term,' and imposed the upper term of three years and then doubled it because of Jenkins' prior strike for a total of six years.  RT at 531.  The trial court imposed a six-year term on count two (Penal Code § 290.011(b)), but stayed execution of the sentence.  *Id*.  On count one (Penal Code § 290.011(b)), the court imposed a consecutive one-third of the middle term of two years, doubled because of Jenkins' strike, to sixteen months.  RT at 531-32.

Jenkins argues that the trial court unlawfully selected count three as the base term but should have selected count two.  Jenkins believes that counts one and three arose from a consolidation of cases, while count two was from the original case, therefore that should have been the count to determine the base term.  Jenkins cites no law to support this assertion nor does he present any viable arguments that the sentence was in excess of state law.

Jenkins term of six years for count three was correct pursuant to Penal Code § 290.018(b) which states that, "any person who is required to register under the act based on a felony conviction or juvenile adjudication who willfully violates any requirement of the act or who has a prior conviction or juvenile adjudication for the offense of failing to register under the act and who subsequently and willfully violates any requirement of the act is guilty of a felony and shall be punished by imprisonment in the state prison for 16 months, or two or three years."  The three years was then doubled due to the prior strike as described in Penal Code § 1170.12(c)(1) which provides

that, "[i]f a defendant has one prior serious and/or violent felony conviction as defined in subdivision (b) that has been pled and proved, the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction." Pursuant to these same statutes, the sixteen months for count one was also appropriate and within the trial court's discretion. Jenkins has failed to demonstrate that the sentence was a violation of federal or state law, and this claim is denied.

## V.   CONCLUSION

The petition for writ of habeas corpus is **DENIED** on the merits. A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Clerk shall close the file.


IT IS SO ORDERED.


Dated: December 6, 2013

_____
EDWARD M. CHEN
United States District Judge

**United States District Court**
For the Northern District of California